# EXHIBIT A

*PROTOCOL FOR DISCOVERY OF ELECTRONICALLY-STORED INFORMATION*
*(also referred to as the "ESI Order")*

### A. DEFINITIONS

(i) "Litigation" means the case captioned *Joao Bock Transaction Systems, LLC v. Scottrade, Inc.*, No. 4:13-CV-01254-CDP (E.D. Mo.).

(ii) "Electronically Stored Information" or "ESI" carries its broadest meaning consistent with Fed. R. Civ. P. 34(a)(1)(A).

(iii) "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34(a)(1)(A) and the definitions of "writings," "recordings," and "photographs" in Fed. R. Evid. 1001, and thus includes both ESI and Paper Discovery (defined below).

(iv) "E-Documents" include ESI that is not Email (as defined below).

(v) "Paper Discovery" means any Document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34(a)(1)(A) that is not ESI.

(vi) "Email" or "electronic mail" means an electronic means for communicating written information through structured data applications (*i.e.*, email client software, electronic mail) that can send, store, process, and receive information.

(vii) "Format" means the internal structure of an electronic file which defines the way it is stored and accessed.

(viii) "Native Format" means the Format of ESI in the application in which such ESI was originally created.

(ix) "Party" or "Parties" means Plaintiff and Defendant (collectively).

(x) "Producing Party" means a Party that produces Documents.

(xi) "Receiving Party" means a Party to whom Documents are produced.

(xii) "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

(xiii) "JPEG" refers to the Joint Photographic Experts Group's file format for storing graphic images using a compression algorithm.

      (xiv)   "Production Bates Number" means the unique serial number attached to every page of a document collected.

## B. GENERAL PROVISIONS

1. The procedures and protocols set forth herein shall govern the production of Documents between the Parties in the Litigation. To the extent they do not contradict the provisions below, the ESI provisions of Rules 16, 26, 33, 34, and 37 of the Federal Rules of Civil Procedure are incorporated herein. Any practice or procedure set forth herein may be varied by written agreement of the Parties. The purpose of this Electronic Discovery Order (the "ESI Order") is to promote an efficient and cost-effective manner of conducting discovery pursuant to the Federal Rules of Civil Procedures.

The Parties have agreed and shall produce all Electronically Stored Information ("ESI") as set forth herein.

2. <u>ESI and Email Production</u>:

    a.   General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email.

    b.   To obtain email, Parties must propound specific email production requests.

    c.   Email production requests shall be phased to occur after the parties exchange initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities and the relevant finances. The Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

    d.   Email production requests shall be propounded for specific issues or subject matter, rather than general discovery of a product or business.

   e. Email production requests shall identify the custodian, search terms, and time frame.  The Parties shall cooperate to identify the proper custodians, the proper search terms, and the proper timeframe.

   f. Each Requesting Party shall limit its email production requests to a total of eight (8) custodians per Producing Party for all such requests.  The parties may jointly agree to modify this limit without the Court's leave.  Sixty (60) days after the receipt of initial documents produced in response to the first set of email production requests, a party may make additional email production requests to five (5) custodians.  The five custodians who receive the additional email production requests may include custodians from whom documents have already been requested.  The Court shall consider contested requests for up to five (5) additional custodians per Producing Party, upon showing a distinct need based on the issues of this specific case.  Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

   g. Each Requesting Party shall limit its email production requests to a total of eight (8) search terms per custodian per Producing Party.  The Parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for up to five (5) additional search terms per custodian, upon showing a distinct need based on the size, complexity and issues of this specific case. The search terms shall be narrowly tailored to particular issues.  Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term.  A

disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word and/or are common alternative ways to refer to the same thing. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

      3.      The Receiving Party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection.

      4.      Pursuant to Fed. R. Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

      5.      The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

      6.      Costs will be shifted for disproportionate ESI production requests pursuant to Fed. R. Civ. Proc. 26. Likewise, a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations.

      7.      A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

      8.      Notwithstanding anything to the contrary herein, the following Documents are not discoverable in the Litigation except upon a showing of good cause as may be determined by the Court.

      a.      Information contained on back-up tapes or other long-term, archival storage media that were created strictly for use as a disaster recovery mechanism. If a Party requests that such long-term storage media be searched for a Document that is not cumulative of

ESI stored in active media or that is not available as Paper Discovery, the parties agree to meet and confer in good faith regarding the request, and the presumption shall be that the requesting party will pay for the cost associated with restoring and searching said medium.

        b.        Temporary data stored in a computer's random access memory or RAM.

        c.        Temporary data such as voicemail, instant messages, social media postings and other forms of ESI that are not normally recorded and preserved in the course of the company's business operations.

        9.        This ESI Order may be modified for good cause.  The Parties shall meet and confer in good faith to resolve any disputes that may arise under this Exhibit A or to discuss a Party's proposed modifications to this ESI Order.  If the Parties cannot reach agreement on a disputed matter, they shall submit the matter to the Court.

**C.  PRODUCTION FORMAT**

        1.        <u>ESI Production Format</u>:

        a.        The Defendant shall produce each document in multi-page or single page Group IV Tagged Image File Format ("TIFF") format.  TIFF files may be multi-page or single-page, and shall be named with the (first) unique Production Bates Number of the document, followed by the extension ".TIF".  Document level text (.txt) files for the TIFF images are to be included as well, comprising text extracted from native files and Optical Character Recognition ("OCR") text for non-native files or native files that do not have extractable text except when the process would result in the extraction of redacted data.  An appropriate load file to be identified by each party, such as a Concordance load file, shall be provided to indicate the location and unitization of the TIFF files.  Included in the load file would be document and attachment boundaries, folder groupings, box number, and any other physical groupings.

   b. The Plaintiff shall produce all images, paper documents, scanned to images, rendered ESI, or other Documents as 300 dpi single-page, Group IV Tiff files or 200 dpi single page JPGs (Color).  Documents should be uniquely and sequentially Bates numbered with an endorsement burned into the each image.  Document level text (.txt) files for the TIFF images are to be included as well, comprising text extracted from native files and Optical Character Recognition ("OCR") text for non-native files or native files that do not have extractable text except when the process would result in the extraction of redacted data.  OCR'd images should have a single .txt file produced for each document.  No image folder should contain more than 2500 images.  Images will be accompanied by a Concordance load file that associates each Bates number with its corresponding single-page TIFF image.

  2. <u>Metadata Fields</u>: General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include metadata absent a showing of good cause.  However, fields showing some information about the document is at times, not burdensome and reasonable in some circumstances.

   a. <u>Metadata fields for E-documents</u>: The Parties agree to provide the following metadata fields to the extent that the metadata exists for any produced file(s):

- Bates Control Number Begin
- Bates Control Number End
- Custodian
- Original file name
- Author
- Create date
- Last save date
- Original document file type (or document extension)

   b. <u>Metadata fields for E-mail</u>: The Parties agree to provide the following metadata fields to the extent that the metadata exists for any produced file(s):

- Bates Control Number Begin
- Bates Control Number End
- Attachment begin
- Attachment end
- Custodian
- File Path
- Email Subject
- Conversation index
- From
- To
- CC
- BCC
- Date Sent
- Time Sent
- Date Received
- Time Received
- File Name
- Author
- Date Created
- Date Modified
- MD5 Hash (or equivalent)
- File Size
- File Extension

Without a showing of good cause, no party shall be obligated to perform an additional search and production of metadata associated with any electronic document beyond the metadata that shall allow for compliance with the production format contained herein.  Metadata includes embedded data about an electronic document, and does not include the text of the document itself.

3. <u>Production of Paper Discovery</u>**:** Electronic production of all discovery materials is the preferred manner in producing discovery for this litigation.  At the discretion of the Producing Party, Paper Discovery may be produced in electronic form.  Paper Discovery produced in electronic form shall be rendered text searchable via OCR or other means by the

Producing Party. There is no obligation to produce metadata fields associated with such Documents, except that such Documents shall be produced in the manner in which they were kept in the usual course of business. A Party need not produce a non-electronic duplicate of any Paper Discovery produced in electronic form, except that upon a reasonable request by the Receiving Party and a showing of good cause (for example, problems with legibility or formatting), the Producing Party must produce the Paper Discovery in its original format at a mutually agreeable time and place.

4. <u>Appearance and Content</u>: Subject to any necessary redaction, each Document's image file shall contain the same information and same physical representation as the Document did in its original format, whether paper or electronic.

5. <u>Document Unitization</u>: If a Document is more than one page, to the extent possible, the unitization of the Document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party. If unitization cannot be maintained, the original unitization shall be documented in a load file or otherwise electronically tracked.

6. <u>Color</u>: Documents containing color need not be produced in color unless the Receiving Party makes a reasonable request pursuant to Paragraph C.7 for the production of ESI in Native Format or pursuant to Paragraph C.2 for production of Paper Discovery in its original format, as applicable.

7. <u>Document Numbering</u>: Each page of a document produced (whether in paper or image format) shall have a sequential, legible, unique alphanumeric identifier ("Document Number") not less than six (6) digits electronically endorsed onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing

on the document.  The Document Number for each Document shall be unique and created so as to identify the Producing Party and the Document Number (for example, "BETA0000000").

       8.     <u>Production of ESI in Native Format</u>:  As an exception, if production of a Document in a commercial image file format (i.e., TIFF) is impracticable or unreasonable (such as video, animation, or audio files and lengthy Excel spreadsheets), the Producing Party shall produce such Document in Native Format consistent with the 2006 Amendments to Rule 34 of the Federal Rules of Civil Procedure.  The Producing Party shall collect and produce Documents in Native Format in a manner that preserves the integrity of the files.  In all other instances, after initial production of ESI in TIFF, a party wanting to receive a Native Format copy of a Document may make a reasonable request.  No Document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the Document before its collection.  Native files shall provide a document id field, a native file name field, and a production file name field as part of the production load file.  A link to the native files shall be provided in a Native Path field within the load file.  For the sake of clarity, this provision does not allow the production of all ESI in Native Format nor does it apply to source code, which is addressed in a separate protective order.

       9.     <u>Production Media</u>:  The Producing Party shall produce images of Documents and load files on external hard drives, CDs, DVDs or other mutually agreeable media ("Production Media").  Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party and the Document Number ranges of the Documents in that production (for example, "BetaNet Production, BETA0000123 - BETA0000456"), or alternatively, Productions may be served via FTP if the size of the production files is a reasonable size for download from an FTP site.

10. <u>Original Documents</u>:  Nothing in this Exhibit A shall eliminate or alter any Party's obligation to retain Native Format copies of all ESI produced in the Litigation and original paper copies for all Paper Discovery produced in the Litigation.

11. <u>De-Duplication</u>: Each party shall de-duplicate e-mails by custodian using MD5 hash value (or equivalent), where feasible.

12. <u>Third-Party Software</u>:  Each party is individually responsible for obtaining any third party software necessary to render and/or view any Documents produced in the Litigation.

13. <u>ESI of Limited Accessibility</u>:  If a Producing Party contends that any responsive ESI, excluding back-up tapes or other long-term storage media that were created strictly for use as a disaster recover mechanism, is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Requesting Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, an estimate of the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (for example, the type of system used to store the ESI), and where such ESI is kept.  The parties shall negotiate in good faith concerning the production of any such ESI.  If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court, who shall determine what burden may be imposed upon the Producing or Receiving Parties to resolve the dispute and whether or to what extent the costs of such production shall be borne by the Producing or Receiving Parties.

**D.  ADDITIONAL ISSUES**

1. <u>English Language</u>:  If any Document exists in more than one language, the Document shall be produced in English, if available.  If no English version of a Document is

available, the Producing Party does not have an obligation to produce an English translation of that Document and does not have an obligation to render that Document text-searchable via OCR or other means.

      2.    <u>Protective Order</u>:  The terms of any Stipulated Protective Order filed with the Court also govern all productions made pursuant to this Exhibit A.